# United States Court of Appeals
# for the Fifth Circuit

—————————

No. 24-50248

—————————

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2025

Lyle W. Cayce
Clerk

Tyanna Dodson, *Doctor* of Chiropractic,

*Plaintiff—Appellant*,

*versus*

ExamWorks, L.L.C.,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-401

———————————————————————

Before Elrod, *Chief Judge*, and Jones and Stewart, *Circuit Judges*.

Per Curiam:[*]

Tyanna Dodson is a chiropractor who seeks compensation from ExamWorks, L.L.C.'s ("ExamWorks"), a medical billing and scheduling provider. Dodson alleges that ExamWorks overbilled her patients' insurers for her services. Because she has not pleaded sufficient injury for Article III standing, we AFFIRM the district court's dismissal of this case and its denial of Dodson's motion to alter or amend the judgment.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-50248

## I.

ExamWorks contracts with medical professionals to provide scheduling and billing services associated with Independent Medical Examinations ("IMEs") for worker's compensation claimants. Dodson is a licensed chiropractor who performs IMEs. In 2015, she entered into a contract with Landmark Exams. That year, ExamWorks acquired Landmark Exams and expressly assumed some of its contracts, including Dodson's. Dodson then terminated her agreement with ExamWorks in 2018. According to her, ExamWorks had mishandled billing for over 80 IMEs that she conducted in 2017 and 2018.[1]

Dodson then sued ExamWorks for overbilling insurers for her services and for billing insurers for services that she did not perform. She brought claims for breach of contract, breach of fiduciary duty, constructive fraud, and declaratory judgment. In part, she pleaded injury from ExamWorks's failure to give her half of its allegedly ill-gotten gains on top of the payments that she has already received for administering the IMEs. Dodson also alleged that ExamWorks's conduct exposes her to a risk of professional discipline and criminal liability. She concedes, however, that no such disciplinary actions or liability have occurred or are imminent.

ExamWorks moved to dismiss Dodson's First Amended Complaint for lack of standing and for judgment on the pleadings. In response, Dodson filed a Second Amended Complaint, but did not first seek leave of the district court or ExamWorks's consent. ExamWorks then filed a motion to strike Dodson's Second Amended Complaint. After a hearing, the magistrate judge issued a Report and Recommendation (the "R&R") in which he concluded

---

[1] ExamWorks disputes this accusation, but at this stage we accept all facts outlined in Dodson's complaint as true. *See Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020).

2

No. 24-50248

that Dodson's arguments were meritless. Specifically, he recommended that the district court grant ExamWorks's motion to dismiss without prejudice because Dodson failed to plead a cognizable injury-in-fact. He also recommended that it dismiss as moot ExamWorks's motion for judgment on the pleadings and its motion to strike Dodson's Second Amended Complaint.

Dodson objected to the R&R.[2] The district court overruled her objections, adopted the R&R in full, and granted ExamWorks's motion to dismiss for lack of standing without prejudice. Dodson then filed a "Motion for New Trial," which the district court construed as a Motion to Alter or Amend Judgment under Federal Rule of Civil Procedure 59(e). Noting that Dodson's motion failed to introduce any novel legal arguments or newly discovered evidence, the district court denied it. Dodson timely appealed.

## II.

"We review dismissals for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) *de novo*." *Williams v. Wynne*, 533 F.3d 360, 364–65 (5th Cir. 2008). We review "the denial of a Rule 59(e) motion only for abuse of discretion." *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

## III.

On appeal, Dodson contends that the district court erroneously concluded that she lacked standing to bring her claims and abused its

---

[2] She did not, however, specifically object to the magistrate judge's conclusions regarding ExamWorks's motion to strike.

discretion by denying her motion to amend the judgment.[3] For reasons that we now discuss, both challenges to the district court's rulings fail.

## A.

To satisfy Article III standing, a plaintiff must show that (1) she has suffered an "injury in fact," (2) that the injury "likely was caused or likely will be caused" by the defendant, and (3) the injury is likely to be "redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alteration adopted and internal quotation marks omitted).

To plead a sufficient injury-in-fact, a plaintiff must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). A harm is particularized when it affects the plaintiff in "a personal and individual way," *id.* at 560 n.1, such that she has a "direct stake in the outcome" of the case, *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). "For a threatened future injury to satisfy the imminence requirement, there must be at least a substantial risk that the injury will

---

[3] Dodson also contends that the district court erred by granting ExamWorks's motion to strike and considering her First Amended Complaint instead of her Second Amended Complaint. Because we conclude that Dodson lacked standing to bring her claims under either complaint, we pretermit discussion of this argument. *See Ermuraki v. Renaud*, 987 F.3d 384, 386 (5th Cir. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998)) ("[A] court cannot assume that it has jurisdiction and proceed to resolve a case on the merits."). Similarly, we pretermit discussion of ExamWorks's motion for judgment on the pleadings. *See id.* We do, however, consider Dodson's motion to alter or amend the judgment because it necessarily reevaluates the district court's standing analysis. *See* Fed. R. Civ. P. 59(e).

No. 24-50248

occur." *Stringer v. Whitley*, 942 F.3d 715, 721 & n.16 (5th Cir. 2019) (internal quotation marks omitted). Otherwise, the dispute is merely "hypothetical or abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Dodson presents a long list of purported injuries which essentially collapse into two for standing purposes: (1) ExamWorks withheld Dodson's cut of its proceeds from fraudulent billing,[4] and (2) she now faces a risk of harm from potential future civil and criminal liability.[5] Neither is sufficient to establish an Article III injury-in-fact. *See Lujan*, 504 U.S. at 560.

**1.**

For her cut of the purportedly ill-gotten gains, Dodson alleges that she suffered "benefit of the bargain damages" from ExamWorks's alleged breach of contract. She states that ExamWorks breached its contract when it "fraudulently billed and overbilled for [her IMEs] and related services without . . . providing [her] with the appropriate fee(s) which she was entitled

---

[4] Dodson takes issue with the magistrate judge's "very narrow[]" interpretation of her injury-in-fact argument only to be that she was entitled to proceeds from ExamWorks's alleged overbilling. She contends that he erroneously failed to consider whether her "claims for breach of trust/fiduciary duty, constructive fraud, and breach of contract or implied contract" constituted allegations of injury-in-fact. Putting aside that the magistrate judge also addressed whether "the risk of future injury" from "ExamWorks' overbilling in her name opens her up to civil and professional consequences . . . confers Article III standing," Dodson appears to conflate her causes of action with an injury-in-fact. *See TransUnion*, 594 U.S. at 427 (explaining that "causes of action for plaintiffs to sue defendants" do not confer standing because, "under Article III, an injury in law is not an injury in fact").

[5] Dodson also pleaded injury from failing to receive "attorney's fees under Chapter 38 of the Texas Civil Practice & Remedies Code." But "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 541 (2020) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) and citing *Steel Co.*, 523 U.S. at 107). Because Dodson has not alleged any underlying injury-in-fact, she cannot do so with only her request for fees as support. *See id.*

to as per the parties' contract." Those fees, she states, are "her half" of ExamWorks's "ill-gotten gains." Similarly, she claims that she entered a fiduciary relationship with ExamWorks. By overbilling insurers for the IMEs that Dodson administered, it allegedly breached its fiduciary duty from that relationship and received a "benefit . . . that is an injury in fact to Dodson."

ExamWorks sees things differently. It states that "Dodson has no legally protected interest in supposed overcharges to third parties." From its perspective, Dodson "received exactly what she bargained for—half the maximum allowable rate she could charge." It explains that "Dodson did not allege she went unpaid for services she actually performed; instead, she alleges that insurers were overbilled for [her] medical services . . . ." She cannot base her alleged injury on that assertion, ExamWorks contends, because the law does not permit the use of the judicial system to divide allegedly ill-gotten gains between tortfeasors. *See* Charles Wright & Arthur Miller, 13A Federal Practice & Procedure: Jurisdiction & Related Matters § 3531.4 (3d ed.) (June 2024 Update) [*hereinafter* Wright & Miller] (collecting cases).

We agree with ExamWorks. Dodson already received all the proceeds that she could legally receive under her contract: "[H]alf of the maximum allowable rate that she could charge." Thus, she has not alleged harm due to breach of contract. The same is true for any fiduciary duty that ExamWorks might have breached. As it states, "there were no fees paid by Dodson to ExamWorks." "Instead, [it] paid [her] per her contract, and then received its own payments from the insurers." Thus, she could not have suffered harm from any breach of fiduciary duty.

Even if Dodson had suffered such harm, it would not have been to a "legally protected interest." *See Lujan*, 504 U.S. at 560. To the extent that Dodson seeks to use federal courts to pursue her cut of allegedly illegally

obtained funds, this will not suffice for Article III standing. Wright & Miller § 3531.4; *Bell v. Am. Traffic Sols., Inc.*, 371 F. App'x 488, 490 (5th Cir. 2010) (citing an earlier edition of the same); *Kasprzak v. Am. Gen. Life & Acc. Ins. Co.*, 942 F. Supp. 303 (E.D. Tex. 1996). She therefore has not pleaded an injury-in-fact under this theory.

## 2.

Dodson's second purported injury stems from ExamWorks allegedly "using [her] chiropractic license to commit insurance fraud." She claims that doing so "open[ed] [her] up to criminal charges and loss of her chiropractor license." This, she argues, led to "a cognizable injury . . . of mental anguish, loss of reputation, and exemplary damages." Dodson contends that these injuries are not too speculative for standing because "[p]recedent does not uniformly require that [she] demonstrate that it is literally certain that the harms identified will come about." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

ExamWorks responds that Dodson's fear of future liability is "too speculative to confer standing." It states she has not yet faced an actual injury because "[s]he has not pled that she actually suffered any liability or professional discipline." It then argues that her risk of future injury is not "imminent" because there is not a "substantial risk" that it will occur. It explains that Dodson is not "under investigation by any entity as a result of ExamWorks'[s] alleged conduct." Further, it contends that the Texas Administrative Code imposes a six-year statute of limitations for violations of a board rule. *See* 22 Tex. Admin. Code § 80.10. ExamWorks observes that the time bar eliminates Dodson's "risk of any professional discipline related to her allegations, which all allegedly occurred in 2018 and before." For these reasons, it concludes that "[n]one of her hypothetical fears have come to pass, nor are any likely to occur."

No. 24-50248

Here, too, we agree with ExamWorks. Any risk of injury that Dodson faces from potential future action by regulators is "too speculative for Article III purposes." *See Clapper*, 568 U.S. at 409. The time period that Dodson alleges the overbilling occurred falls outside the six-year statute of limitations under which Texas can impose professional discipline. *See* 22 TEX. ADMIN. CODE § 80.10. With respect to criminal liability, Dodson has not pointed to any investigation against her, or any "concrete facts showing that" she faces a "substantial risk" of such an investigation. *See Clapper*, 568 U.S. at 414 n.5; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014) (requiring that a litigant "allege[] a credible threat of enforcement").

\* \* \*

In sum, Dodson has failed to state a cognizable injury-in-fact for Article III standing.[6] For these reasons, we hold that the district court correctly dismissed her claims. *See Lujan*, 504 U.S. at 560.

## B.

A court may alter or amend a judgment under Federal Rule of Civil Procedure 59(e) to "(1) accommodate an intervening change in controlling law, (2) account for newly discovered evidence, or (3) correct a manifest error of law or fact." *Trevino*, 944 F.3d at 570. However, "[i]t is not the 'proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'" *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)).

---

[6] Because Dodson must satisfy each standing prong for Article III jurisdiction, we pretermit discussion of causation and redressability. *See All. for Hippocratic Med.*, 602 U.S. at 380.

Dodson gives us a cursory examination of this issue. She offers only a conclusory statement that "[t]he district court abused its discretion" by denying her motion to amend the judgment because she "showed that Article III standing was present and the district court had committed an manifest error of law."

ExamWorks responds that Dodson's "half-hearted appeal" on this issue "highlights that she seeks only to rehash arguments that were fully and finally addressed before judgment." *See Simon*, 891 F.2d at 1159. As such, it urges the panel to affirm the district court's denial because Dodson "raises no new arguments."

ExamWorks is correct. As the magistrate judge noted in his R&R, Dodson did not introduce any novel legal arguments or newly discovered evidence. Now on appeal, she bases her contention that the district court "abused its discretion" solely on her assertion that it incorrectly held that "there is no manifest injustice present." We require more. *See Trevino*, 944 F.3d at 570. Dodson provides no argument that dismissing her case for lack of standing was a "manifest error of law or fact," let alone that the district court abused its discretion by concluding otherwise. *See id.* Such a "conclusory assertion" constitutes "inadequate briefing" to preserve an argument for review. *See United States v. Bennett*, 874 F.3d 236, 243 n.9 (5th Cir. 2017). And thus, we do not address it herein.

## IV.

For the foregoing reasons, we AFFIRM the district court's dismissal of this case and its denial of Dodson's motion to alter or amend the judgment.